WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife, Esq.
David R. Fertig, Esq.

*Attorneys for Debtor and Plaintiff LBSF*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>LEHMAN BROTHERS HOLDINGS INC.,<br><br>Debtor. | Chapter 11 Case<br>No. 08-13555 (JMP)<br><br>(Jointly Administered) |
| LEHMAN BROTHERS SPECIAL FINANCING, INC.,<br><br>Plaintiff,<br><br>v.<br><br>MILLENNIUM USA, L.P. and MILLENNIUM MANAGEMENT, L.L.C.,<br><br>Defendants. | Adv. Proc. No. 10-_____ |

**ADVERSARY COMPLAINT**

Plaintiff Lehman Brothers Special Financing Inc. ("LBSF"), as debtor in possession, as and for its Adversary Complaint against Defendants Millennium U.S.A., L.P. ("Millennium USA"), and Millennium Management, L.L.C. ("Management" and together with Millennium USA, "Defendants"), hereby alleges as follows:

## INTRODUCTION

1.    This action arises from Defendants' refusal to pay funds due to LBSF and their knowing disregard of their legal and fiduciary duties under Delaware law, the parties' agreement, and title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in order to gain leverage and personal reward at the expense of LBSF, its estate, and LBSF's other creditors.  Defendants unilaterally, and despite repeated demands from LBSF, withheld and continue to withhold approximately $99 million (the "<u>Hold Back Amount</u>") admittedly owing to LBSF for the redemption of its capital account (the "<u>Capital Account</u>") representing LBSF's partnership interest in Millennium USA.

2.    As justification, Defendants assert patently unlawful and nonmutual setoff rights (the "<u>Purported Setoffs</u>") against LBSF on account of obligations that (i) LBSF allegedly owes to Millennium Partners, L.P. ("<u>Partners</u>"), a separate partnership of which Millennium USA is only one of four limited partners, and (ii) alleged claims of *other* entities against affiliates and debtors *other than* LBSF.

3.    As illustrated by the diagram below,[1] the Purported Setoffs are in express violation of and are impermissible under section 553(a) of the Bankruptcy Code because the obligations Defendants seek to set off are clearly non-mutual.  LBSF has a claim against Millennium USA, but Millennium USA *has no claim* against LBSF which it could permissibly use to setoff against its obligation to LBSF.

---

[1] The amount of Partners' alleged claim in the diagram is taken from Partners' proof of claim no. 24479 filed in the LBSF chapter 11 case.  LBSF reserves, and expressly does not waive, its right to challenge the amount and validity of Partners' claim at a later date.



4.    Millennium USA may not use the alleged claim of Partners, a separate entity with its own limited partners, to avoid paying its obligation, which is due and owing to LBSF.  Such setoff would be unlawful and detrimental to the LBSF estate because it would (a) deprive LBSF of its rightful claim against Millennium USA and (b) transform Partners' unsecured claim into a secured claim (by way of setoff) in violation of the Bankruptcy Code.  Similarly, despite attempts to the contrary, Millennium USA's obligation to LBSF cannot be set off against alleged obligations of LBSF's *affiliates to other entities*, because such setoff would be in express violation of the mutuality requirement under the Bankruptcy Code.

5.    Defendants, therefore, have no valid setoff right that justifies the withholding of the Hold Back Amount—and are acting in express breach of the parties' partnership agreement, Delaware law and the Bankruptcy Code.  Moreover, Management, in its capacity as the general partner of Millennium USA, was a fiduciary to LBSF under Delaware law, and the withholding of the Hold Back Amount, despite

LBSF's repeated demands, and without any reasonable legal basis, was a breach of Management's fiduciary duties to LBSF. *See* 6 <u>Del</u>. <u>C</u>. § 1521 (1998).

6. To date, and despite LBSF's unequivocal demands, Defendants have not sought relief from the automatic stay to exercise such withholding, but instead, in express disregard of the Bankruptcy Code, Delaware law, and the Partnership Agreement (as defined below), wholly refused distribution and forced *LBSF* to bring this action before the Court to recover LBSF's property for the benefit of its estate.

7. Accordingly, LBSF brings this action to obtain: (a) a declaration establishing the unlawfulness of the Purported Setoffs under section 553(a) of the Bankruptcy Code and Delaware law; (b) a judgment finding Defendants in breach of the Partnership Agreement (as defined below) and awarding LBSF the full amount and damages to which it is entitled thereunder; (c) a judgment finding Management violated its fiduciary duties to LBSF and awarding LBSF damages; (d) an order under section 542(b) of the Bankruptcy Code requiring Millennium USA to immediately turn over more than $99 million (with Accrued Interest as defined herein), which it admits is owed to LBSF for redemption of LBSF's Capital Account, and which is property of the LBSF estate under section 541(a)(1) of the Bankruptcy Code; and (e) an award of damages to LBSF, against Defendants, on account of each Defendants' knowing, willful, and contemptuous violation of the automatic stay.

## JURISDICTION AND VENUE

8. This is a civil proceeding arising in a case under the Bankruptcy Code, § 11 U.S.C. 101, *et seq.*, within the meaning of 28 U.S.C. § 1334. It is properly

brought as an adversary proceeding pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

9. This Court has jurisdiction to entertain the claims asserted herein pursuant to 28 U.S.C. § 1334(b) (civil cases arising under title 11), 28 U.S.C. § 1334(e)(1) (district court's exclusive jurisdiction over property of the estate), and 28 U.S.C. § 157(b) (core proceedings arising under title 11).

10. This is a core proceeding under 28 U.S.C. § 157(b).

11. Venue is proper in this district under 28 U.S.C. § 1409(a).

12. This Court has personal jurisdiction over Millennium USA pursuant to Bankruptcy Rule 7004(f).

## PARTIES AND RELATED ENTITIES

13. Commencing on September 15, 2008, and periodically thereafter (as applicable, the "<u>Commencement Date</u>"), Lehman Brothers Holding, Inc. ("<u>LBHI</u>") and certain of its subsidiaries (collectively with LBSF and LBHI the "<u>Debtors</u>") commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code. LBSF commenced its chapter 11 case on October 3, 2008. LBSF's chapter 11 case has been consolidated with LBHI's chapter 11 case for procedural purposes only, and those cases are being jointly administered pursuant to Bankruptcy Rule 1015(b). LBSF's principal place of business is located at 1271 Sixth Avenue, New York, New York 10020 and is authorized to operate its businesses and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

14.     Millennium USA is a limited partnership organized and existing under the laws of the State of Delaware with a registered address of 111 Broadway, New York, New York 10006-1901.

15.     Management is the general partner of Millennium USA and maintains its principal place of business at 666 Fifth Avenue, 8th Floor, New York, New York 10103-0899.

16.     Partners is an exempted limited partnership registered under the laws of the Cayman Islands.  Partners' general partner is Management, and its four limited partners are Millennium USA, Millennium International, Ltd. ("International"), Millennium Global Estate, L.P. ("Global Estate"), and Edina, L.L.C. ("Edina").  Millennium USA was organized to accept investments from U.S. investors that qualify as "accredited investors" and "qualified purchasers" under U.S. federal securities laws.  International, a Cayman Islands exempted company, accepts investments from foreign entities and persons that qualify as "accredited investors" and "qualified purchasers" under the U.S. federal securities laws.  Global Estates, a Delaware limited partnership, accepts investments only from insurance company segregated asset accounts, insurance company qualified general accounts, and insurance dedicated partnerships that qualify as "accredited investors" and "qualified purchasers" under the U.S. federal securities laws.  Edina is wholly-owned by Millennium USA and Global Estates.

## FACTUAL ALLEGATIONS

### A.     The Millennium USA Partnership

17.     Millennium USA is a Delaware limited partnership of which Management is the general partner (the "General Partner"), and LBSF was one of many

limited partners of Millennium USA (the "Limited Partners"). *See* Sixth Amended and Restated Limited Partnership Agreement of Millennium U.S.A., L.P. (the "Partnership Agreement"), at § 1.04.[2] Millennium USA's primary purpose is to invest capital in Partners, but it also trades and invests part of its capital for its own account. Confidential Memorandum Relating to Class OO and Class PP Interests of Millennium U.S.A., dated June 1, 2007 (the "Confidential Memorandum"), at I-2.[3]

18.     As General Partner, Management is exclusively responsible for managing Millennium USA and has authority to carry out any and all of the objects and purposes of Millennium USA. *See* Partnership Agreement, at §§ 2.01 and 2.02. The General Partner's duties and liabilities are governed by Delaware law and the Delaware Revised Uniform Limited Partnership Act (the "DRULPA"), 6 Del. C. § 17-101, et. seq. *See* Partnership Agreement, at § 9.06 and 1. The DRULPA provides that, "[e]xcept as provided in this chapter or in the partnership agreement, a general partner of a limited partnership has the liabilities of a partner in a partnership that is governed by the Delaware Uniform Partnership Law in effect on July 11, 1999 (6 Del. C. § 15-101, et. seq.) and the rules of law and equity, including the Law Merchant, shall govern." 6 Del. C. § 17-403(b). Section 1521 of the Delaware Uniform Partnership Law that was in effect on July 11, 1999 (the "DUPL"),[4] provides that the general partner holds the accounts of the limited partners as a fiduciary. 6 Del. C. § 1521 (1998). Under the

---

[2] A true and correct copy of the Partnership Agreement has been filed under seal as Exhibit A.

[3] A true and correct copy of the Confidential Memorandum has been filed under seal as Exhibit B.

[4] All references to the DUPL in this Complaint will refer to the DUPL in effect on July 11, 1999.

DUPL and Delaware common law, courts have held that the general partner owes the duties of good faith, fair dealing, and loyalty to other partners.

19.     Each Limited Partner contributes capital to Millennium USA through cash and/or investments (a "Capital Contribution"). *Id.* at § 3.02(a). Millennium USA establishes and maintains a Capital Account for, and in the amount of, each Limited Partner's Capital Contribution. *Id.* at § 3.03(a). Under the Partnership Agreement, each Limited Partner or former Limited Partner's partnership interest is "the amount of the Capital Accounts . . . that such Limited Partner (or former Limited Partner) would have received, or in fact did receive, . . . upon withdrawal from [Millennium USA] . . . ." *Id.* at §1.04. Additionally, the DUPL provides that "a partner's interest in the partnership is his share of the profits and surplus, and is personal property." 6 Del. C. § 1526 (1998).

20.     On or about April 28, 2008, LBSF made a capital contribution ("Initial Capital Contribution") in the amount of $80,000,000 for Class PP interests in Millennium USA. *See* Subscription Documents (For Class OO or PP Interests) from the General Partner (the "Subscription Documents"), dated April 28, 2008, at 10.[5] On June 23, 2008, LBSF made an additional capital contribution in the amount of $17,000,000 (the "Additional Capital Contribution" and together with the Initial Capital Contribution, the "LBSF Capital Contribution"), also in exchange for Class PP interests. *See* Additional Subscription Form, dated June 23, 2005 ("Additional Subscription Form").[6]

---

[5] A true and correct copy of the Subscription Documents have been filed under seal as Exhibit C.

[6] A true and correct copy of the Additional Subscription Form is filed under seal as Exhibit D.

**B.      Withdrawals from Millennium USA**

21.      Under the terms of the Partnership Agreement, a Limited Partner may withdraw its Capital Account in full upon 90 days written notice prior to the quarterly dates, December 31, March 31, June 30, and September 30 ("Class OO/PP Quarterly Withdrawal Right").  *See* Partnership Agreement at §§ 4.01, 4.02(g)(i). Withdrawals are limited by and subject to (a) withdrawal limits (the "Gates") in section 4.02(g)(ii); (b) early termination fees (4% for withdrawals within one year of the initial investment and 2% for withdrawals made within two years of the initial investment) (the "Early Termination Fee") in 4.02(g)(iii); and (c) section 4.04 of the Partnership Agreement.[7]  *Id.*  Section 6.01(b) provides that a Limited Partner who has filed for bankruptcy protection may withdraw "from [Millennium USA] as of the next occurring date on which the Limited Partner could have withdrawn without regard to such . . . bankruptcy, termination or dissolution."  *Id.* at § 6.01(b).

22.      The Partnership Agreement and Delaware law entitles a withdrawing partner to receive any distribution on account of its withdrawal in a prompt and timely manner.  Specifically the Partnership Agreement expressly provides that payments on account of withdrawals under the Partnership Agreement shall be made as follows:

---

[7] Section 4.02(g)(ii) places a limitation on Class PP withdrawals equal to the greater of (i) $20 million or (ii) 8% of the aggregate net value (as of the withdrawal date) of the portion of (a) the Capital Accounts that are subject to Class OO/PP Quarterly Withdrawal Rights and (b) Class OO and Class PP Shares of the Offshore Fund.  *Id.* at §4.02(g)(ii).  Section 4.02(g)(iii) of the Partnership Agreement assesses a 4% charge to any withdrawal request made within the first year of the investment and a 2% charge for withdrawals within the second year of the investment.  *See* Partnership Agreement at §4.02(g)(iii).  Section 4.04 allows for holdbacks in connection with the establishment of reserves under section 3.07 for expected and contingent liabilities of the partnership, including in connection with the dissolution or downsizing of Millennium USA.

> [p]ayment of any amount withdrawn pursuant to this Sec. 4.02 shall be made approximately 90% (computed on the basis of unaudited data as of the withdrawal date, and subject to reserves or holdbacks pursuant to Secs. 3.07 and 4.04 hereof,[8] respectively) within 30 days following the withdrawal date. The balance shall be paid (subject to audit adjustments) within 30 days following the completion of the next audit of [Millennium USA].

*Id.* at § 4.02(h). Additionally, section 17-604 of the DRULPA provides that, except in circumstances not relevant here:

> upon withdrawal any withdrawing partner is entitled to receive any distribution to which such partner is entitled under a partnership agreement and, if not otherwise provided in a partnership agreement, such partner is entitled to receive, *within a reasonable time after withdrawal,* the fair value of such partner's partnership interest in the limited partnership as of the date of withdrawal based upon such partner's right to share in distributions from the limited partnership.

6 Del. C. § 17-604 (emphasis added).

**C.    LBSF's Request for Withdrawal of its Capital Account and Defendants' Continued Refusal To Pay the Hold Back Amount Despite LBSF's Repeated Demand.**

23.    On December 30, 2008, LBSF submitted a written request ("First Request for Withdrawal") in accordance with the Partnership Agreement, for withdrawal of its complete Capital Account as of the next available quarterly date, March 31, 2009.[9] *See* Partnership Agreement, at § 4.02(g)(i). Consequently, Management (on behalf of Millennium USA) was then obligated to pay LBSF its Capital Account in accordance with section 4.02(h) of the Partnership Agreement and under applicable Delaware law. 6

---

[8] Defendants have not asserted holdbacks in connection with sections 3.07 or 4.04.

[9] A true and correct copy of the First Request for Withdrawal is attached hereto as Exhibit E.

<u>Del</u>. <u>C</u>. § 17-604. Instead of fulfilling the obligation to provide LBSF with payment of its Capital Account, however, Defendants refused to make the required payment.

24. On March 31, 2009, the date upon which LBSF's withdrawal would have been effective, Larry Statsky, Chief Administrative Officer of the General Partner, Management, wrote Bryan Marsal, Chief Executive Officer and Chief Restructuring Officer of LBSF, acknowledging LBSF's Request for Withdrawal (the "<u>Acknowledgement Letter</u>"),[10] but refusing to pay LBSF the amount in its Capital Account. Management acknowledged that the balance of LBSF's Capital Account as of February 28, 2009, was over $95 million, but refused to pay *any* portion of the amount due because of the "myriad [of] claims and causes of action between [Millennium USA], Partners, and certain of its subsidiaries, on the one hand, and LBSF and its affiliates, on the other hand." *Id.* Specifically, Management contended that:

> It remains unclear whether the various Lehman Brothers entities were, in fact, separate. We believe they were not. The issue of substantive consolidation, as well as issues relating to agency and/or veil piercing theories of liability, have not yet been addressed in the Lehman bankruptcy cases or other related proceedings. In order to preserve and protect all rights and remedies of [Millennium USA], including potential rights of set-off, [Millennium USA] has determined that it will defer payment of the amount to which LBSF would otherwise be entitled (<u>i.e.</u>, as reduced by the pre-existing contractual limits on withdrawal and the early withdrawal charge) (the "<u>Hold Back Amount</u>").

*Id.* at 1-2.[11] Management further stated that it would pay interest equal to only the short term (13 week) Treasury Bill Rate ("<u>Accrued Interest</u>") on the Hold Back Amount. *Id.*

---

[10] A true and correct copy of the Acknowledgement Letter is attached hereto as <u>Exhibit F</u>.

[11] The definition of Hold Back Amount in the Acknowledgment Letter is the same as the definition of the Hold Back Amount in this Complaint.

Attached to the Acknowledgement Letter was a schedule of the "myriad" of alleged claims of other entities against Lehman affiliates.[12]  *Id.* at 3.  The schedule contains no claim of Millennium USA against LBSF.

25.     On April 14, 2009, LBSF responded to Management by letter (the "First Demand Letter"), contesting Millennium USA's right to withhold the Hold Back Amount.[13]  First, LBSF challenged the validity of the purported setoff rights, as triangular and cross-affiliate in nature and unenforceable under section 553(a) of the Bankruptcy Code.  *See* First Demand Letter, at 1-2.  Second, LBSF explained that withholding on the basis of future substantive consolidation or piercing of the corporate veils of the Debtors was wholly unlawful because (1) substantive consolidation has not been established or sought here and, even if it were sought, it does not necessarily create mutuality for setoff purposes, and (2) Millennium USA, as a third-party creditor, has no standing to pierce the Debtors' corporate veils.  *Id.* at 2.  Finally, LBSF noted that Millennium USA could not withhold the balance of LBSF's Capital Account based on such legally invalid justifications for setoff—and even if Millennium USA thought it *might* have the right to a setoff, it was required to seek relief from the automatic stay in order to pursue it.  *Id.*

26.     Despite its receipt of the First Demand Letter, Management continued to withhold the Hold Back Amount and in oral and written exchanges with LBSF further specified the nature of its setoff theory by alleging that Millennium USA's *own* affiliates could be combined to create rights of setoff.  Specifically, Management

---

[12] Although the Schedule contains the statement that it will be "subject to FRE [Federal Rule of Evidence] 408," LBSF is not seeking to use the schedule for any of the reasons stated by Rule 408(a) and, therefore, its use of the schedule here is not barred.  Fed. R. Evid. 408(b).

[13] A true and correct copy of the First Demand Letter is attached hereto as Exhibit G.

justified the withholding of the Hold Back Amount as a setoff against amounts that LBSF allegedly owed Partners under a separate swap transaction. Management expressed that Millennium USA and Partners could be consolidated for purposes of setoff because of their structure and because Management is the General Partner of each of them.

27.     In a letter dated July 16, 2009 (the "Second Demand Letter"), LBSF reiterated the contents of the First Demand Letter and responded to Management's subsequent allegations and grounds for withholding.[14]     Specifically, LBSF refuted Management's argument that the Millennium entities could be combined for purposes of setoff by noting that the law is clear—a partner (Millennium USA) may not setoff its *own* obligation against the claim of its partnership (Partners).

28.     LBSF continued to submit requests for withdrawal for each quarter on March 30, 2009, and again on June 30, 2009 (the "Subsequent Requests for Withdrawal"), in an effort to withdraw its Capital Account in compliance with the Gates, which limited the amount that could be withdrawn, and required LBSF to continue to submit quarterly requests in order to withdraw the full balance of the Capital Account. Management debited $12,120,794 from LBSF's Capital Account on March 31, 2009, and debited $11,151,383 on June 30, 2009. *See* Unaudited Statement of Changes in Individual Partner's Account For the Quarter Ended March 31, 2009 ("Statement of Capital Account 1Q 2009"), attached to letter from Management dated April 30, 2009, and Unaudited Statement of Changes in Individual Partner's Account For the Quarter Ended June 30, 2009 ("Statement of Capital Account 2Q 2009"), attached to letter from

---

[14] A true and correct copy of the Second Demand Letter is attached hereto as Exhibit H.

Management dated July 30, 2009.[15]  On September 30, 2009, Management debited the remaining balance of LBSF's Capital Account, which it stated was $75,962,358.  *See* Unaudited Statement of Changes in Individual Partner's Account For the Quarter Ended September 30, 2009 ("Statement of Capital Account 3Q 2009"), attached to letter from Management dated October 30, 2009, from Management, at 8.[16]  Despite now having debited the full balance of LBSF's Capital Account, Defendants continue to withhold distribution of the sum in the Capital Account (as the Hold Back Amount), which sum, by Millennium USA's own calculations, now totals $99,234,539, excluding Accrued Interest.

29.    Defendants continue to withhold the Hold Back Amount and have failed to move for relief from the automatic stay to effect the Purported Setoffs.  Finally, in a letter dated November 3, 2009 (the "Final Demand Letter"), LBSF reiterated that it "cannot accept [Millennium USA's] alleged setoff defenses because of a clear lack of mutuality of the parties and their obligations."[17]  *See* Final Demand Letter at 1. Specifically, Millennium USA may not withhold funds that it owes to LBSF by virtue of alleged claims against LBSF's affiliates or by virtue of an alleged claim Partners has against LBSF.  *Id.* at 2.  LBSF "reiterate[d]" its demand "one final time" and warned

---

[15] A true and correct copy of the letter from Management dated April 30, 2009 and the Statement of Capital Account 1Q 2009, is attached hereto as Exhibit I.  A true and correct copy of the letter from Management dated July 30, 2009 and the Statement of Capital Account 2Q 2009 is attached hereto as Exhibit J.

[16] A true and correct copy of the letter from Management dated October 30, 2009 and the Statement of Capital Account 3Q 2009 is attached hereto as Exhibit K.

[17] A true and correct copy of the Final Demand Letter is attached hereto as Exhibit L.

Management that unless it immediately paid LBSF, LBSF would be left with no choice but to "resort to legal action." *Id.*

30.     Despite LBSF's unequivocal demand in the Final Demand Letter, Defendants persist in their failure and refusal to pay the Hold Back Amount in express disregard of the Bankruptcy Code, the Partnership Agreement and Delaware law, and to date, after more than a year has elapsed, they have distributed *nothing* to LBSF on account of its due and owing $99 million obligation.

## COUNT I

**(Declaratory Judgment That The Purported Setoffs Are Not Permitted Under Delaware Law or Section 553 Of The Bankruptcy Code And That Defendants Are Legally Obligated Immediately To Pay To LBSF, In Full, The Hold Back Amount And All Accrued Interest Thereon)**

31.     LBSF repeats and realleges each and every allegation set forth in paragraphs 1 through 30 as if fully set forth herein.

32.     To date, Defendants have failed to pay *any* portion of the Hold Back Amount and purport to assert invalid, non-mutual and unlawful rights of setoff.

33.     A creditor's setoff right is governed by section 553(a) of the Bankruptcy Code, which preserves a setoff right under non-bankruptcy applicable law provided the setoff is of mutual and prepetition debts against a debtor.   11 U.S.C. § 553(a).  Section 553(a) of the Bankruptcy Code provides, in relevant part, that:

> [e]xcept as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case[.]

11 U.S.C. § 553(a).

34.     By its terms, section 553 of the Bankruptcy Code does not create a right of setoff; it merely preserves any right of setoff that a creditor of a debtor may have under the applicable non-bankruptcy law, while imposing the additional requirement that any debt sought to be setoff against a debt owed to a debtor be a "mutual debt"—i.e., a debt owing *by the debtor* to the creditor seeking to avail itself of the setoff on the other hand.  11 U.S.C. § 553(a).  The law is clear and well settled, mutuality is strictly construed and requires that that debts and claims be owed between the same parties (not between and among affiliates) acting in the same capacity.  Mutuality of obligations is also a prerequisite to the right of setoff under Delaware law, which is the applicable non-bankruptcy law governing the parties' rights and obligations under the Partnership Agreement.  *See* Partnership Agreement at § 9.06.

35.     The Purported Setoffs do not involve "mutual debts" because they are attempts by Defendants to set off the debt admittedly owed from Millennium USA *to LBSF* against (a) obligations allegedly owed by LBSF *to Partners*; or (b) obligations allegedly owed to entities *other than Millennium USA* by *affiliates* of LBSF.  These Purported Setoffs are of non-mutual claims because the claims are not held by the same parties.

36.     By virtue of the foregoing, there now exists an actual, justiciable controversy between LBSF and Defendants relating to their respective legal rights, duties, and obligations under the Bankruptcy Code, which controversy is now ripe for adjudication pursuant to 28 U.S.C. § 2201.

37.     LBSF, therefore, requests a judgment declaring the rights and obligations of the parties under the Bankruptcy Code, including a declaration that: (a) the

Purported Setoffs are unlawful and not permitted under, and constitute a violation of the Bankruptcy Code and Delaware law; and (b) Defendants are required immediately to distribute to LBSF the full Hold Back Amount admittedly owed by Millennium USA to LBSF—i.e., the sum of $99,234,539—plus all Accrued Interest thereon, in accordance with section 4.02(h) of the Partnership Agreement.

<u>**COUNT II**</u>

**(Defendants' Breach Of The Partnership Agreement)**

38. LBSF repeats and realleges each and every allegation set forth in paragraphs 1 through 37 as if fully set forth herein.

39. Management as General Partner is fully vested with the responsibilities of managing Millennium USA. *See* Partnership Agreement at § 2.01.

40. As alleged hereinabove, and pursuant to section 4.02(h) of the Partnership Agreement, Defendants were required to pay to LBSF 90% of the amount due for the redemption of its Capital Account within 30 days following each quarter for which a valid request for withdrawal had been submitted (subject only to the limitations of the Gate and the Early Termination Fee). *Id.* at § 4.02(h). The balance with Accrued Interest was then due following the completion of the next audit of Millennium USA. *Id.*

41. The Partnership Agreement, as governed by Delaware law, is also subject to the terms of section 17-604 of the DRULPA, which, as stated above, entitles any withdrawing partner to "receive any distribution to which [it] is entitled. . .within a reasonable time after such withdrawal." 6 <u>Del. C</u>. § 17-604.

42. All conditions, if any, to LBSF's payment for the redemption of its Capital Account have been satisfied, and LBSF has made several oral and written

demands upon Defendants, including in the First Demand Letter, the Second Demand Letter, and the Final Demand Letter, for payment, in full, of the Hold Back Amount and all Accrued Interest thereon.

43. Despite LBSF's repeated demands, Defendants have, to date, failed to distribute any funds to LBSF from its Capital Account. By withholding payment for its Capital Account (as the Hold Back Amount), the Defendants are acting in clear violation of Delaware law and in breach of the Partnership Agreement.

44. Additionally, requiring LBSF to pay (by virtue of a setoff) any sums that LBSF may owe to extraneous entities also violates the Partnership Agreement, because the Partnership Agreement expressly limits a Limited Partner's obligations to "(a) the amount of its Capital Contribution. . . . ; (b) its share of any undistributed profits. . . ; (c) its obligation to make other payments expressly provided for in the [Partnership] Agreement; and (d) the amount of any distributions wrongfully distributed to it." *See* Partnership Agreement, at § 1.04.

45. Accordingly, and by reason of the foregoing, LBSF is entitled to an award of monetary damages in an amount to be determined at trial but, in all events, no less than the sum of the Hold Back Amount, plus Accrued Interest thereon, and all consequential damages (including attorneys fees and expenses) as applicable.

## COUNT III
### (Management's Breach Of Fiduciary Duty)

46. LBSF repeats and realleges each and every allegation set forth in paragraphs 1 through 45 as if fully set forth herein.

47. Section 1521 of the DUPL provides that:

> Every partner must account to the partnership for any benefit, and hold as trustee for it any profits, derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property.

6 Del. C. § 1521 (1998). This section has been interpreted to impose upon the general partner a fiduciary duty for the accounts of the limited partners. Additionally, under Delaware common law, a general partner owes the duties of utmost good faith, fairness and loyalty to other partners and requires that the general partner not utilize the partnership for personal gain at the expense of any limited partner.

48. Management held LBSF's Capital Account as a trustee, under section 1521 of the DUPL and Delaware common law, and owed the fiduciary duties of good faith, fairness, and loyalty with respect to LBSF's Capital Account. Management engaged in willful misconduct and knowingly breached its fiduciary duty of loyalty in wantonly and willfully refusing to distribute to LBSF its Capital Account, by alleging a clearly unlawful non-mutual setoff in violation of Delaware law, the Bankruptcy Code, and the Partnership Agreement, and by requiring LBSF to bring this adversary proceeding. Defendants' withholding of sums due and owing to LBSF was clearly *not* the result of a mistake of judgment or action or inaction which Defendants could have reasonably believed to be legally permissible under Delaware law, the Partnership Agreement, or the Bankruptcy Code. Rather, Defendants' actions, which amount to holding hostage LBSF's rightful distribution and forcing LBSF to bring this litigation, were willful and egregious violations of all applicable law.

49. LBSF has suffered, and continues to suffer, significant damages, including (but not limited to) loss of use of the funds it should have received for its

Capital Account (the Hold Back Amount) and all Accrued Interest, and the opportunity cost associated therewith, and the accumulation of legal costs and fees (including attorneys' fees and expenses) incurred as a result Management's breach of its fiduciary duties.

50.     Accordingly, LBSF is entitled to an award of monetary damages in an amount to be determined at trial for the loss of the Hold Back Amount, lost opportunity, the Accrued Interest, and legal fees and expenses, as a result of Management's breach of its fiduciary duties.

## COUNT IV

**(Turnover Of The Entire Balance Of LBSF's Capital Account Under The Partnership Agreement Pursuant To Section 542(b) Of The Bankruptcy Code)**

51.     LBSF repeats and realleges each and every allegation set forth in paragraphs 1 through 50 as if fully set forth herein.

52.     As stated above, on October 3, 2008, LBSF filed a petition under chapter 11 of the Bankruptcy Code.  Thereafter, on December 30, 2008, LBSF submitted the Request for Withdrawal of its Capital Account to Millennium USA pursuant to the Partnership Agreement.

53.     As alleged hereinabove, Defendants admit that the Hold Back Amount, excluding interest, amounts to $99,234,539, which amount represents LBSF's Capital Account and partnership interest in Millennium USA.  *See* Partnership Agreement, at 2; 6 Del. C. § 1526 (1998).  As such, the Hold Back Amount is property of the LBSF estate under section 541(a) of the Bankruptcy Code.  Partnership Agreement at § 1.04.

54. Section 542(b) of the Bankruptcy Code expressly provides that ". . . an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, *shall pay such debt to*, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor." 11 U.S.C. § 542(b) (emphasis added). Section 542(b) of the Bankruptcy Code clearly obligated Millennium USA to pay the matured debt "on demand" and its failure to do so was in express violation of the Bankruptcy Code.

55. Accordingly, LBSF requests an order compelling Millennium USA to turn over the full Hold Back Amount pursuant to section 542(b) of the Bankruptcy Code as it constitutes property of the bankruptcy estate under section 541(a) of the Bankruptcy Code. Additionally, LBSF asserts a claim for Accrued Interest on the Hold Back Amount under section 4.02(h) of the Partnership Agreement.

## COUNT V

**(Contempt Against Defendants For Willfully
Violating The Automatic Stay And Awarding Damages To LBSF)**

56. LBSF repeats and realleges each and every allegation set forth in paragraphs 1 through 55 as if fully set forth herein.

57. Pursuant to section 362(a)(3) of the Bankruptcy Code, the filing of a voluntary case under chapter 11 of the Bankruptcy Code likewise operates to stay "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" absent an order of the Bankruptcy Court granting relief from the stay. 11 U.S.C. § 362(a)(3).

58. The Hold Back Amount constitutes property of LBSF's estate, and Defendants' withholding therefore constituted, and continues to constitute, an "act to

obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

59.     Section 362(a)(6) of the Bankruptcy Code bars any creditor from taking "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C.§ 362(a)(6). Defendants' assertion of the Purported Setoffs is an attempt to collect sums owed to Partners, allegedly owed by LBSF, in full, in clear violation of section 362(a)(6).

60.     Moreover, section 362(b)(7) expressly prohibits the exercise of a right of "setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor." 11 U.S.C. § 362(a)(7). Thus, even if Defendants had a valid right of setoff under section 553(a) of the Bankruptcy Code (which they do not), section 362(a)(7) expressly prohibited them from exercising any right unless they first *promptly* sought relief from the automatic stay, which they failed to do.

61.     Defendants' blatant disregard of the Bankruptcy Code and this Court's authority and discretion to permit setoffs is a willful and wanton violation of the automatic stay extant under sections 362(a)(3), 362(a)(6), and 362(a)(7) of the Bankruptcy Code.

62.     Accordingly, LBSF is entitled to (1) a declaratory judgment that Defendants acted in willful violation of sections 362(a)(3), 362(a)(6), and 362(a)(7) of the Bankruptcy Code; and (2) pursuant to section 105(a) of the Bankruptcy Code, LBSF is entitled to an award of monetary damages, in an amount to be determined at trial and

including (but not limited to) LBSF's actual damages, costs, and attorneys' fees and expenses, on account of Defendants' knowing and willful violation of the automatic stay.

## PRAYER FOR RELIEF

WHEREFORE, LBSF respectfully requests that judgment be entered as follows:

A.     On Count I, a judgment declaring that Defendants assertion of the Purported Setoffs is unlawful because it is an attempt to set off non-mutual obligations, which is not permitted under, and constitutes a clear violation of, the Bankruptcy Code and Delaware law;

B.     On Count II, (i) a judgment finding that in refusing to distribute the Hold Back Amount without any legally valid basis for doing so, Defendants breached the Partnership Agreements and violated Delaware law, and (ii) awarding LBSF monetary damages, in an amount to be determined at trial but, in all events, no less than the sum of $99,234,537, plus Accrued Interest, and applicable attorneys' fees;

C.     On Count III, a judgment finding Management breached its fiduciary duties under DUPL and awarding monetary damages to LBSF, in an amount to be determined at trial but in all events including actual damages, costs, and attorneys' fees and expenses incurred by LBSF by reason of Management's breach of fiduciary duties;

D.     On Count IV, a judgment that the Hold Back Amount is property of the LBSF bankruptcy estate under section 541 of the Bankruptcy Code and requiring Millennium USA to turn over, under section 542 of the Bankruptcy Code, the sum of $99,234,537, plus Accrued Interest thereon, as applicable;

E. On Count V, a judgment finding Defendants in contempt for knowingly and willfully violating the automatic stay, and awarding damages to LBSF against Defendants pursuant to section 105(a) of the Bankruptcy Code, in an amount to be determined at trial, but in all events including actual damages, costs, and attorneys' fees and expenses incurred by LBSF by reason of Defendants' knowing and willful violation of the automatic stay; and

F. For such other and further relief, including interest, costs, and attorneys' fees, as the Court deems just and proper.

Dated: New York, New York
      January 15, 2010

s/ Lori R. Fife
Lori R. Fife, Esq.
David R. Fertig, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153-0019
Telephone: (212) 310-8000
Facsimile:  (212) 310-8007

*Attorneys for Debtor and Plaintiff LBSF*

# EXHIBIT A

to Lehman Brothers Special Financing Inc.'s
Adversary Complaint against Millennium
USA , L.P. and Millennium Management,
L.L.C.

# (filed under seal)

# EXHIBIT B

to Lehman Brothers Special Financing Inc.'s
Adversary Complaint against Millennium
USA , L.P. and Millennium Management,
L.L.C.

# (filed under seal)

# EXHIBIT C

to Lehman Brothers Special Financing Inc.'s
Adversary Complaint against Millennium
USA , L.P. and Millennium Management,
L.L.C.

# (filed under seal)

# EXHIBIT D

to Lehman Brothers Special Financing Inc.'s
Adversary Complaint against Millennium
USA , L.P. and Millennium Management,
L.L.C.

# (filed under seal)



EXHIBIT E

# MILLENNIUM USA, L.P.

## REQUEST FOR WITHDRAWAL OF LIMITED PARTNERSHIP INTEREST

Millennium USA, L.P.
666 Fifth Avenue, 8th Floor
New York, New York 10103-0899
Attn.: Robert Williams

Dear Sir:

The undersigned limited partner of the Partnership (the "Limited Partner") hereby requests that the Partnership withdraw from the Limited Partner's capital account in the Partnership (the "Capital Account") and pay the following amount to the Limited Partner as directed below:

(check one)

   ✓    the entire balance of the Limited Partner's Capital Account

_____ $_____

on the next available withdrawal date (the "Withdrawal Date") following receipt of this letter, determined as provided in the Partnership Agreement in accordance with applicable withdrawal rights.[*]

The cash proceeds of the Capital Account should be paid and forwarded to the Limited Partner as follows:

*Lehman Brothers Special Financing Inc*
Name

_____
Address

---

[*] This Request for Withdrawal must be received at least 90 days prior to a withdrawal date. **Requests for withdrawal must be unconditional. Notices of withdrawals are irrevocable by the Investor.**

# MILLENNIUM USA, L.P.

If desired, set forth instructions for the account to which the cash proceeds of the withdrawal may be sent by wire transfer:

\* Please note
change in
Payment
Instructions
attached.

Citibank NA New York
_____
Name of Bank

388 Greenwich St NY, NY 10013
_____
Address of Bank

REDACTED

If you require
additional documentation
Please let us know

Lehman Brothers Special Financing Inc.
_____
Name Under Which Account Is Held

**Note: Withdrawal proceeds shall be paid to the same account from which the Limited Partner's investment in the Partnership was originally remitted, unless the Managing Partner, in its sole discretion, agrees otherwise.**

Signature(s) Guaranteed by:

_____

See attached
Incumbency Certificate

Very truly yours, DJ Cole

_____
Signature of Limited Partner

DAVID J. COLE
_____
Print Name

Mailing Address

1271 Avenue of the Americas
NY, NY 10020
43rd Floor

2

*New Payment Instructions*

To: Counterparties to Lehman Brothers Holdings Inc. and Related Subsidiaries Listed Below

From: David Coles

Date: November 6, 2008

RE: Lehman Brothers Settlement Account Change – IMMEDIATE ACTION REQUIRED

Effective immediately (Thursday, November 6, 2008), please change the beneficiary wire information on settlement transactions. All funds should be sent to the new accounts listed with Citibank below. There are additional foreign currency settlement accounts on the second page. Your prompt attention and implementation by COB Friday, November 7, 2008 will be greatly appreciated. **Please make sure to include your entities name as the counterparty in the Reference field of the wire transfer, list what Lehman entity you are remitting funds to, and briefly describe what the transaction relates to.**

To the extent any funds are transferred to a Lehman entity in satisfaction of an amount that has been calculated by a counterparty, kindly be advised that unless otherwise specifically agreed Lehman is not able at this time to verify such calculations and must reserve its right to request further funds if its calculations later show a greater amount due, and also reserves any other rights that it may have under applicable law.

If you have any questions, please contact Yuliya Martiak at Yuliya.Martiak@lehman.com or Helen Chu at Helen.Chu@lehman.com.

Citibank USD Bank Accounts
ABA #: 021-000-089
SWIFT Code: CITIUS33

Citibank N.A. New York
388 Greenwich Street
New York, NY 10013

| Legal Entity | Currency | Account Name |
|---|---|---|
| Lehman Brothers Holdings Inc | USD | Lehman Brothers Holdings Inc - DIP - Cash Concentration |
| | USD | LBHI - Residential Real Estate - DIP |
| | USD | LBHI - Commercial Real Estate - DIP |
| | USD | LBHI - Principal Investments - DIP |
| Lehman Brothers Special Financing Inc | USD | Lehman Brothers Special Financing Inc - DIP |
| | USD | LBSF - Mortgage Derivatives - DIP |
| Lehman Brothers Financial Products Inc | USD | Lehman Brothers Financial Products Inc - DIP |
| Lehman Brothers Derivative Products Inc | USD | Lehman Brothers Derivative Products Inc - DIP |
| Lehman Brothers OTC Derivatives Inc | USD | Lehman Brothers OTC Derivatives Inc -DIP |
| Lehman Brothers Commercial Corporation | USD | Lehman Brothers Commercial Corp -DIP |
| Lehman Brothers Commodity Services Inc | USD | Lehman Brothers Commodity Services Inc -DIP |
| Lehman Commercial Paper Inc | USD | Lehman Commercial Paper Inc - DIP - Operating AC |
| | USD | LCPI - Mortgage Loans - DIP |
| Lehman Commercial Paper Inc (UK Branch) | USD | Lehman Commercial Paper Inc - DIP - UK Loans |
| LB I Group Inc. | USD | LB I Group Inc - Mortgage |
| | USD | LB I Group Inc - Principal Investments |
| Property Asset Management Inc. | USD | Property Asset Management Inc |
| Lehman Ali Inc. | USD | Lehman Ali Inc |

REDACTED

```
Citibank FX Bank Accounts
SWIFT Code: CITIGB2L

Citibank N.A. London
25 Canada Square
Canary Wharf
Citigroup Centre 2
London, England  E14 5LB
```

| Legal Entity | Currency | Account Name |
|---|---|---|
| Lehman Commercial Paper Inc | EUR | Lehman Bros Comm Paper Inc - DIP |
| | GBP | Lehman Bros Comm Paper Inc - DIP |
| | JPY | Lehman Bros Comm Paper Inc - DIP |
| | CAD | Lehman Bros Comm Paper Inc - DIP |
| Lehman Brothers Special Financing Inc | EUR | Lehman Bros Spec Fin Inc - DIP |
| | GBP | Lehman Bros Spec Fin Inc - DIP |
| | JPY | Lehman Bros Spec Fin Inc - DIP |
| | CAD | Lehman Bros Spec Fin Inc - DIP |
| Lehman Brothers Holdings Inc (UK Branch) | EUR | LBHI (UK Branch) - DIP |
| | GBP | LBHI (UK Branch) - DIP |
| | JPY | LBHI (UK Branch) - DIP |
| | CAD | LBHI (UK Branch) - DIP |

REDACTED

**Additional Settlement Instructions for Foreign Currency Remittances into Citibank London**

| Currency | Code | Settlement Instruction |
|---|---|---|
| Euro | (EUR) | Please pay EUR [amount] without deduction via direct clearing linkage to Citibank N.A., London (CITIGB2L) for credit to [account name], [account number or IBAN (See Note Below)] |
| Great British Pounds | (GBP) | Please pay GBP [amount] without deduction via direct clearing linkage to Citibank N.A., London (CITIGB2L), sort code 18-50-08, for credit to [account name], [account number or IBAN (See Note Below)] |
| Japanese Yen | (JPY) | Please pay JPY [amount] direct via MT103 to Citibank N.A. London (CITIGB2L) for credit to [account name, account number], with separate cover message (MT202) via your correspondent bank to Citibank N.A., Tokyo (CITIJPJT), favour acct number A/C 0201109418 |
| Canadian Dollars | (CAD) | Please pay CAD [amount] direct via MT103 to Citibank N.A. London (CITIGB2L) for credit to [account name, account number], with separate cover message (MT202) via your correspondent bank to Citibank Canada, Toronto (CITICATT) |

**Note:**
Currently the IBAN is not a mandatory field for a payment within the eurozone. However, for payments to conform to the eurozone industry standard of an STP payment, the beneficiary IBAN must be provided. Payments, which do NOT adhere to STP standard, may be subject to additional charges when processed by banks in Europe.


By: _DJ Coles_

    Name:  David Coles
    Title:

        Chief Financial Officer, Co-Treasurer, Controller and Executive Vice President:
            Lehman Brothers Holdings, Inc.
        Chief Financial Officer, Treasurer and Controller:
            Lehman Brothers Financial Products, Inc.
            Lehman Brothers Special Financing Inc.
            Lehman Brothers Derivative Products Inc.
            Lehman Brothers Commodity Services, Inc.
            Lehman Brothers OTC Derivatives Inc.
            Lehman Brothers Commercial Paper Inc.
            Lehman Brothers Commercial Corporation
            Lehman Ali Inc.
            Property Asset Management Inc.
            LB I Group Inc.

*Incumbency Certificate*

## CERTIFICATE OF INCUMBENCY AND SIGNATURE

I, Aaron Guth, a duly elected, qualified and acting Assistant Secretary of Lehman Brothers Special Financing Inc., a Delaware corporation (the "Corporation"), do hereby certify that the person listed below holds the title in the Corporation indicated opposite his name on the date hereof and that the signature appearing opposite his name is a specimen signature of such person; and that such person is authorized and empowered to execute and deliver any and all documents, instruments and agreements in the name and on behalf of the Corporation as of the date hereof.

| Name | Title | Signature |
|------|-------|-----------|
| David Coles | Chief Financial Officer, Treasurer and Controller | |

IN WITNESS WHEREOF, I have hereunto set my hand this 7th day of November, 2008

_____
Name: Aaron Guth
Title: Assistant Secretary

# UNANIMOUS WRITTEN CONSENT

# OF THE BOARD OF DIRECTORS OF

## Lehman Brothers Special Financing Inc.

The undersigned, being all of the members of the Board of Directors of Lehman Brothers Special Financing Inc., a Delaware corporation (the "Corporation"), do hereby adopt the following resolutions by unanimous consent in lieu of a meeting, in accordance with the General Corporation Law of the State of Delaware:

**WHEREAS**, various officers of the Corporation have recently resigned their positions and there is a need to appoint new officers and to confirm the persons who will be officers of the Corporation on a going-forward basis;

### NOW, THEREFORE, BE IT

**RESOLVED**, that the individuals listed below, be elected as officers of the Corporation in the capacities indicated, to serve at the pleasure of the Board of Directors until the next annual meeting of the Board of Directors of the Corporation or action in lieu thereof and until their successors have been elected and have qualified; provided that all officerships of any such person (other than persons who are employees of Alvarez & Marsal Holdings, LLC) shall immediately cease without the necessity or acceptance of a resignation or relinquishment in the event that such person ceases to be employed by at least one of Lehman Brothers Holdings Inc. (or its successor) or any of its subsidiaries or the Corporation, whether by death, retirement, termination with or without cause or otherwise, and any other person heretofore elected an officer of the Corporation not listed below shall no longer serve as an officer, and is hereby removed, without cause, from any position held as an officer:

| Name | Title(s) |
|---|---|
| Bryan Marsal | Chief Executive Officer, Chief Restructuring Officer |
| James Fogarty | President, Chief Operating Officer |
| David Coles | Chief Financial Officer, Treasurer and Controller |
| Jeffrey Fitts | Vice President |
| Gerald Pietroforte | Vice President |
| Daniel Ehrmann | Vice President |
| Jeffrey Welikson | Secretary |

| | |
|---|---|
| Gwen Zeisler | Assistant Secretary |
| Karen Corrigan | Assistant Secretary |
| James J. Killerlane III | Assistant Secretary |
| Aaron Guth | Assistant Secretary |
| Cindy Buckholz | Assistant Secretary |
| Jeffry Ciongoli | Vice President and Assistant Treasurer |
| Linda Klang | Vice President and Assistant Treasurer |
| Darryl Steinberg | Vice President and Assistant Treasurer |
| Salvatore Barbuzza | Vice President and Assistant Treasurer |
| Charles Masseli | Vice President and Assistant Treasurer |
| Ricardo Gomez | Vice President and Assistant Treasurer |

Dated: September 26, 2008

_____
Bryan Marsal

_____
James Fogarty

_____
David Coles

**WRITTEN CONSENT**
**OF THE SOLE STOCKHOLDER OF**
**LEHMAN BROTHERS SPECIAL FINANCING INC.**
**(The "Corporation")**

The undersigned, being the sole stockholder of the Corporation, a corporation organized and existing under the laws of the State of Delaware, does hereby adopt the following resolutions by written consent, in accordance with the General Corporation Law of the State of Delaware:

**RESOLVED**, that the persons who were serving as directors of the Corporation immediately before the time of this consent be removed without cause as Directors of the Corporation as of the date hereof; and be it

**FURTHER RESOLVED**, that, regardless of the number of person who have previously served as directors of the Corporation and any action previously taken by the Board of Directors of the Corporation concerning the size of the Board of Directors, the number of directors as of the date hereof shall be three and the Bylaws of the Corporation be, and hereby are, amended to provide that the Board of Directors as of the date hereof shall consist of three individuals, subject to further action of the Board of Directors to increase or decrease the size of the Board of Directors to the extent permitted by applicable law, which action the Board of Directors is hereby authorized to take; and be it

**FURTHER RESOLVED,** that the following persons be elected as Directors of the Corporation, to serve at the pleasure of the stockholders of the Corporation until the next annual meeting of the stockholders of the Corporation or action in lieu thereof and until their successors have been elected and have qualified:

> Bryan Marsal
> James Fogarty
> David Coles

Dated: <u>September 26, 2008</u>

Lehman ALI Inc.

By: _____
        Aaron Guth, Assistant Secretary



# EXHIBIT F

# millennium

March 31, 2009

Mr. Bryan Marsal
Chief Executive Officer and Chief
Restructuring Officer
Lehman Brothers Special Financing Inc.
1271 Avenue of the Americas
43rd Floor
New York, New York 10020

      Re:     Millennium USA, L.P.
            (Request for Withdrawal of Limited Partnership Interest of
            <u>Lehman Brothers Special Financing Inc.)</u>

Dear Bryan:

        Reference is made to the Request for Withdrawal of Limited Partnership Interest (the "Withdrawal Request") that was sent by Lehman Brothers Special Financing Inc. ("LBSF") to Millennium USA, L.P. (the "Partnership") on December 30, 2008. By the Withdrawal Request, LBSF requests that the Partnership withdraw and pay to LBSF the entire balance of LBSF's capital account in the Partnership as of March 31, 2009. The balance of LBSF's capital account as of February 28, 2009 was $95,708,778.

        As an initial matter, as you know, all withdrawal requests that are submitted to the Partnership at this time are subject to, and limited by, pre-existing contractual limits on withdrawal, which reduce the amount of a withdrawal request to a maximum of the greater of (x) $20 million and (y) 8% of the aggregate of the net asset value reflected in the capital accounts relating to all Class PP interests as of the applicable quarterly withdrawal date. Outstanding requests for withdrawals of Class PP interests are currently in excess of this threshold and there will therefore be some limitation on the extent to which withdrawal requests will be satisfied. In addition, pursuant to Section 4.02(g)(iii) of the Partnership Agreement, any and all amounts that are withdrawn by LBSF as of March 31, 2009 will be subject to an early withdrawal charge of 4%. Pursuant to Section 4.02(h) of the Partnership Agreement, the Partnership is not obligated to make payments in respect of a withdrawal request for at least 30 days.

        At present, there are myriad claims and causes of action between the Partnership, Millennium Partners, L.P. and certain of its subsidiaries, on the one hand, and LBSF and its affiliates, on the other hand. (Enclosed for your reference is a schedule that provides a preliminary review of such claims and causes of action.) It remains unclear whether the various Lehman Brothers entities were, in fact, separate. We believe they were not. The issue of substantive consolidation, as well as issues relating to agency and/or veil piercing theories of liability, have not yet been addressed in the Lehman bankruptcy cases or other related

proceedings. In order to preserve and protect all rights and remedies of the Partnership, including potential rights of set-off, the Partnership has determined that it will defer payment of the amount to which LBSF would otherwise be entitled (i.e., as reduced by the pre-existing contractual limits on withdrawal and the early withdrawal charge) (the "Hold Back Amount"). To ensure that neither party is prejudiced as we work through the issues and claims between the parties, the Partnership will allocate a return to the Hold Back Amount equal to the short term (13 week) Treasury Bill rate (as set forth under the Partnership Agreement), and not the rate of return of the Partnership. Of course, if LBSF would prefer that the Hold Back Amount remain invested in Millennium Partners, L.P., we would accommodate that.

We trust and anticipate that this resolution will be satisfactory to LBSF. If, however, you believe that the steps described herein to preserve and protect the rights and remedies of the Partnership are inconsistent with the Bankruptcy Code or require relief from the Bankruptcy Court, we will direct our counsel to prepare all necessary pleadings. We believe, however, that all would be better served to work together towards a global resolution of the issues and to avoid the time and expense of unnecessary litigation.

This letter is without prejudice or waiver of any and all rights, claims and remedies of the Partnership and its affiliates, all of which are expressly reserved.

If you have any questions or would like to discuss this matter further, please contact me at your earliest convenience.

Sincerely,

Millennium Management LLC

By: _____
Larry Statsky
Chief Administrative Officer

cc:
    Harvey Miller, Esq.
    Brad Eric Scheler, Esq.

Confidential Draft
Subject to continuing review, amendment and supplement in all respects
Subject to FRE 408 and any and all similar and applicable laws

Schedule of Claims of Millennium Partners, L.P. and its subsidiaries and affiliates
against Lehman Brothers Holdings Inc. and its subsidiaries

| Lehman Entity | Millennium Entity | Type of Claim | Claim Amount |
|---|---|---|---|
| Lehman Brothers Holdings Inc. | Millennium Partners, L.P. | Return of cash | $10,474,364 |
| Lehman Brothers International (Europe)* | Millennium Partners, L.P. | Return of cash and securities | $126,565,447 |
| Lehman Brothers International (Europe)* | Millennium Partners, L.P. | OTC derivatives transactions | $18,002,047 |
| Lehman Brothers International (Europe) | Millennium Partners, L.P. | Listed options | $5,592,937 |
| Lehman Brothers International (Europe)* | Integrated Core Strategies (Asia) Pte. Ltd. | OTC derivatives transactions | $11,016,469 |
| Lehman Brothers International (Europe) | Integrated Core Strategies (Asia) Pte. Ltd. | Return of cash and securities | $40,942,435 |
| Lehman Brothers International (Europe) | Integrated Core Strategies (Europe) S.a.r.l. | Replacement securities (Repo) | $4,684,603 |
| Lehman Brothers International (Europe) | Integrated Core Strategies (Europe) S.a.r.l. | Return of cash and securities | $125,693,712 |
| Lehman Brothers International (Europe) | Newberry Credit Opportunities LLC | Return of cash and securities | $8,622,890 |
| Lehman Brothers Inc. | Millenco LLC | Replacement securities (Repo) | $2,535,068 |
| Lehman Brothers Inc. | Millennium Partners, L.P. | Return of cash and securities | $34,769,603 |
| Lehman Brothers Special Financing Inc.* | Millennium Partners, L.P. | Derivatives transactions | $15,887,640 |
| Lehman Commercial Paper Inc. | Millennium Partners, L.P. | Subparticipation in term loan | $362,656 |
| Lehman Commercial Paper Inc. | Newberry Credit Opportunities LLC | Subparticipation in bank debt | $2,337,957 |
| Lehman Brothers Finance S.A.* | Millennium International, Ltd. | Derivatives transaction | $31,489,394 |

**$438,977,223**

\* Claim also is an obligation of Lehman Brothers Holdings Inc. pursuant to a parent guaranty or other form of
credit support. It remains unclear whether the various Lehman Brothers entities were, in fact, separate. We believe
they were not. The issue of substantive consolidation, as well as issues relating to agency and/or veil piercing
theories of liability, have not yet been addressed in the Lehman bankruptcy cases or other related proceedings.

In addition to the above information, Millennium Partners, L.P. holds and invests the capital that is the subject of the
Lehman Brothers Special Financing Inc. withdrawal request.

7244001

EXHIBIT G

767 FIFTH AVENUE
NEW YORK, NY 10153
(212) 310-8000
FAX: (212) 310-8007

AUSTIN
BOSTON
BUDAPEST
DALLAS
FRANKFURT
HONG KONG
HOUSTON
LONDON
MIAMI
MUNICH
PARIS
PRAGUE
PROVIDENCE
SHANGHAI
SILICON VALLEY
WARSAW
WASHINGTON, D.C.

LORI R. FIFE
DIRECT LINE (212) 310-8318
E-MAIL: lori.fife@weil.com

April 14, 2009

Mr. Larry Statsky
Chief Administrative Officer
Millennium Management LLC
666 Fifth Avenue, 8th Floor
New York, NY, 10103

> Re:    Millennium USA, L.P. ("Millennium")

Dear Mr. Statsky:

We represent Lehman Brothers Holdings Inc., Lehman Brothers Special Financing Inc. ("LBSF") and their affiliates in connection with their chapter 11 cases pending in the United States Bankruptcy Court for the Southern District of New York. Your letter dated March 31, 2009, to Bryan Marsal, in which you addressed the request by LBSF made on December 30, 2008, to withdraw its partnership interest in Millennium USA, L.P. (the "Partnership") by March 31, 2009 has been referred to us.

LBSF has a valid right to withdraw its equity interest and its payment is not subject to withholding for alleged rights of setoff.

Millennium contends that it may withhold the payment due and owing to LBSF under the Partnership Agreement as a result of the "myriad of claims and causes of action between the Partnership, Millennium Partners L.P. and certain of its subsidiaries, on the one hand, and LBSF and its affiliates on the other hand." Millennium may not withhold funds due LBSF on this basis. A creditor's setoff right is governed by section 553(a) of the Bankruptcy Code, which permits the setoff of only mutual and prepetition debts against a debtor. 11 U.S.C. § 553(a); *see, e.g., Scherling v. Hellman Elec. Corp. (In re Westchester Structures, Inc.)*, 181 B.R. 730, 739 (Bankr. S.D.N.Y. 1995). "Mutuality" requires that the debts and credits be held in the same right, between the same parties, standing in the same capacity. *See, e.g., Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138, 149 (2d Cir. 2002). As such, triangular setoffs, or setoffs between and among affiliates and/or

subsidiaries, are impermissible. *See, e.g., In re Semcrude, L.P.*, 399 B.R. 388, 393-94 (Bankr. D. Del. 2009).

Millennium's attempt to justify its withholding by virtue of a potential future substantive consolidation of the estates is wholly invalid and contrary to applicable law. Millennium may not withhold the balance of LBSF's capital account pending substantive consolidation or a corporate veil piercing of the Debtors. Where a creditor does not have a valid existing setoff right, even a temporary freeze, is impermissible and in violation of section 362(a)(6) of the Bankruptcy Code. *See, e.g., In re Radcliffe*, 372 B.R. 401, 417-18 (Bankr. N.D. Ind. 2007). Indeed, even to the extent that Millennium *might* have a mutual setoff right by virtue of the limited claims it holds against LBSF itself (as shown by the schedule),[1] Millennium may not withhold funds unless it promptly moves for relief from the stay. *Citizens Bank v. Strumpf*, 516 U.S. 16, 19 (1995); *LCN Invs. v. First Fid. Bank, N.A.*, No. 92-civ-7584, 2000 WL 1072460, at *6 (S.D.N.Y. Aug. 3, 2000). Millennium may not on its own, determine it has a right to setoff against any funds owed to LBSF. *See, e.g., Eastern Airlines, Inc. v. Chem. Bank, Inc. (In re Ionosphere Clubs, Inc.)*, 177 B.R. 198, 205, 208-09 (Bankr. S.D.N.Y. 1995).

Moreover, substantive consolidation does not create the necessary mutuality for purposes of setoff. *See In re Wade Cook Fin. Corp.*, 375 B.R. 580, 598 (B.A.P. 9th Cir. 2007); *In re Garden Ridge Corp.*, 338 B.R. 627, 641 (Bankr. D. Del. 2006). Unlike corporate veil piercing, substantive consolidation does not establish that entities are alter egos and hold one entity responsible for the debts of another. *In re Wade Cook Fin. Corp.*, 375 B.R. at 598. Substantive consolidation does not ignore the corporate form for purposes of setoffs, nor does it have a retroactive effect. *In re Garden Ridge Corp.*, 338 B.R. at 641. Thus, Millennium is not permitted to withhold funds on this basis.

Furthermore, to the extent that Millennium contends that LBSF should ignore the corporate form or pierce the corporate veil to allow a triangular offset, Millennium's claim would be barred for lack of standing. *See, e.g., Duke Energy Mktg. L.L.C. v. Enron Corp. (In re Enron Corp.)*, No. 01-16034, Adv. Proc. No. 02-3609, 2003 Bankr. LEXIS 330, *10 (Bankr. S.D.N.Y. Apr. 17, 2003). An action to pierce the corporate veil is a derivative right of the estate, *id.* at *19; and any attempt by Millennium to bring such a claim is in violation of the automatic stay under section 362(a)(3) of the Bankruptcy Code. 11 U.S.C. § 362(a)(3) (prohibiting "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate").

In view of the foregoing persuasive and controlling authority, LBSF demands that Millennium immediately turnover the payment from the withdrawal of the Partnership as

---

[1] Millennium attached a schedule of claims against Lehman Brothers entities to the March 31, 2009 letter. The only claim alleged against LBSF is $15,887,640, under "derivatives transactions." LBSF believes the amount stated is not net of posted collateral and other potential setoffs in LBSF's favor and, accordingly, LBSF reserves all rights.

it is property of the LBSF estate under section 541 of the Bankruptcy Code. 11 U.S.C. §§ 541, 542.

This letter is without prejudice or waiver of any rights, claims and remedies of LBSF, all of which are expressly reserved.

Very Truly Yours,

Lori R. Fife

cc:

Mr. Bryan Marsal
Harvey Miller, Esq.
Brad Eric Scheler, Esq.

# EXHIBIT H

# WEIL, GOTSHAL & MANGES LLP

767 FIFTH AVENUE • NEW YORK, NY 10153-0119
(212) 310-8000
FAX: (212) 310-8007

LORI R. FIFE
PARTNER
DIRECT LINE (212) 310-8318
lori.fife@weil.com

AUSTIN
BEIJING
BOSTON
BUDAPEST
DALLAS
DUBAI
FRANKFURT
HONG KONG
HOUSTON
LONDON
MIAMI
MUNICH
PARIS
PRAGUE
PROVIDENCE
SHANGHAI
SILICON VALLEY
WARSAW
WASHINGTON, D.C.

July 16, 2009

**VIA EMAIL AND U.S. MAIL**

Gregg L. Weiner, Esq.
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, NY 10004
(212) 859-8579

Re: **Millennium USA, L.P. ("Millennium")**

Dear Gregg:

As you know, we represent Lehman Brothers Holdings, Inc. ("LBHI"), Lehman Brothers Special Financing Inc. ("LBSF"), and certain of their affiliates (collectively, the "Debtors") in their chapter 11 cases under title 11 of the United States Code (the "Bankruptcy Code") in the Southern District of New York.

On December 30, 2008, LBSF sent a request for withdrawal of its limited partnership interest Millennium USA, LP ("Millennium"), seeking to withdraw the entire balance of its capital account (the "Withdraw Amount"). Millennium has asserted two bases upon which to withhold payment of the Withdraw Amount. The first, raised by letter to Bryan Marsal dated March 31, 2009, was premised on a possible future substantive consolidation of the Debtors' estates, which Millennium argued would allow it to treat the Debtors' estates as one entity for purposes of setoff. We responded to your assertion, by letter dated April 14, 2009, citing controlling case law supporting the conclusion that substantive consolidation does not, by itself, create mutuality for purposes of setoff. *See In re Wade Cook Fin. Corp.*, 375 B.R. 580, 598 (B.A.P. 9th Cir. 2007); *In re Garden Ridge Corp.*, 338 B.R. 627, 641 (Bankr. D. Del. 2008).

As stated in your email to Lori Fife on June 5, 2009, Millennium now raises a second basis for withholding of payment of the Withdrawal Amount, this time relying upon consolidation of itself with Millennium Partners L.P. ("Partners") for

Gregg L. Weiner
July 16, 2009
Page 2

purposes of setoff. Apparently, you are taking the position that Millennium may setoff payment of the Withdrawal Amount against a claim of Partners in the amount of $15,887,640, which claim arose from the close out of transactions under an ISDA master agreement dated January 30, 1995 between Partners and LBSF. You state that Millennium is a limited partner of, and "feeder fund" for, Partners and that as a result of their master-feeder fund relationship, Millennium and Partners can be considered one entity. As support for this argument, you note that Millennium and Partners share the same general partner, Millennium Management, L.L.C.

The law is clear, however, that Millennium and Partners cannot be treated as one entity for purposes of setoff. *See, e.g., Gray v. Rollo*, 85 U.S. 629, 21 L. Ed. 927 (1873). Millennium cannot avoid payment on its obligation to LBSF by virtue of Partners' claim, because Partners, as a separate entity with its own partners, owes no obligation to LBSF. *Capital Concepts Properties 85-1 v. Mutual First, Inc.*, 35 F.3d 170, 175 (5th Cir. 1994); *see also In re Garden Ridge Corp.*, 338 B.R. 627, 636 (Bankr. D. Del. 2006); *In re Nuclear Imaging Systems, Inc.*, 260 B.R. 724, 733 (Bankr. E.D. Pa. 2000). A debt due by an individual partner cannot be setoff against the claims of the partnership. *In re Virginia Block Co.*, 16 B.R. 560, 562 (Bankr. W.D. Va. 1981); *Hulse v. Knapp*, 20 F.Supp. 137, 138 (W.D.N.Y. 1937). Because the law does not permit Millennium to cancel its debt to LBSF by virtue of obligation owed to Partners, Millennium's argument has no merit and the Debtors cannot agree to a setoff on this basis. *Gray v. Rollo*, 85 U.S. at 635.

We reiterate our demand for the immediate payment of the Withdrawal Amount to LBSF—a demand that was initially made almost seven months ago. Unless you comply with our request, we will have no option but to resort to legal action.

This letter is without prejudice or waiver of any rights, claims and remedies of LBSF, all of which are expressly reserved.

Sincerely,

Lori R. Fife

cc: Mr. Bryan Marsal
Harvey R. Miller, Esq.

# EXHIBIT I

# MILLENNIUM MANAGEMENT LLC

666 FIFTH AVENUE
NEW YORK, NY 10103-0899

TELEPHONE 212.841.4100
TELEFAX 212.841.4141

April 30, 2009

Dear Investor:

Millennium USA LP ("USA") results for the quarter ended March 31, 2009 are set forth below. The returns below are based on amounts invested as of January 1, 2009 and assume that the partner has been an investor since January 1, 2008 without any withdrawals. The returns are net of expenses and reflect an Incentive Allocation after recovery of an investor's high water mark. The computation of returns for an individual partner may vary based on the timing of capital transactions.

|  | Quarter Ended March 31, 2009 |
|---|---|
| Including New Issues | +4.54% |
| Excluding New Issues | +4.55% |

In addition, USA's estimated month to date return through April 23, 2009 was +0.58%.

Enclosed with this letter are USA's Unaudited Consolidated Statements of Financial Condition and Income and the Unaudited Statement of Changes in Individual Partner's Capital for the quarter ended March 31, 2009. Also enclosed please find the Unaudited Consolidated Statements of Financial Condition and Income for Millennium Partners, L.P. for the quarter ended March 31, 2009. Included in the Unaudited Statement of Changes in Individual Partner's Capital is a reference to your prior representation to us regarding the status of your account relating to "new issues". Please review this information and immediately contact Robert Williams at (212) 841-4125 if that information is inaccurate. If you do not contact us within fifteen (15) days after the date of this letter, the representation will be deemed conclusive.

USA's total net asset value decreased by $5,963,399 for the quarter ended March 31, 2009. In accordance with CFTC regulations, the commodity pool operator, Millennium Management LLC, on whose behalf this is signed below, represents that to the best of its knowledge all information contained in the statements described in the preceding paragraphs is true, correct and complete.

As a reminder, GlobeOp became our third party administrator in January 2009. As administrator, they perform certain checks on valuation and reconciliation information. GlobeOp compares valuations of publicly traded security positions provided by the Investment Manager to market data independently obtained from third party providers. Fair valuations of other security positions are compared to information received from third parties, including brokers and independent valuation service providers. Security positions and cash balances are verified to custodial prime brokerage statements. Monthly activity to the general ledger is reviewed on a sample basis to verify it as materially correct.

In response to requests from our Limited Partners, we are offering new classes of interests, Classes CC and DD, with a different method of applying the contractual limits on withdrawals when those limits are in effect. Existing holders of interests may, at their option, convert their interests into the new classes, which will have a 10% contractual limit on withdrawals. The new classes and the process for conversion are more fully described in our letter of April 14, 2009 and on our website at www.mlp.com. If you desire to participate, you should respond to the materials no later than May 15.

As always, if you have any questions, please do not hesitate to contact Robert Williams, Terry Feeney or myself.


Sincerely,
Millennium Management LLC
Commodity Pool Operator for Millennium USA LP and Millennium Partners, L.P.
Managing General Partner

Israel A. Englander
Managing Member

Enclosure

# Millennium USA LP

## Unaudited Consolidated Statement of Financial Condition

March 31, 2009

*(In thousands)*

**Assets**

| | | |
|---|---|---:|
| Cash | $ | 2 |
| Receivable from brokers, dealers and clearing organizations | | 12,291 |
| Securities owned | | 30,967 |
| Investment in Millennium Partners, L.P. | | 2,289,286 |
| Receivable from Millennium Partners, L.P. | | 115,942 |
| Other assets | | 45,116 |
| Total assets | $ | 2,493,604 |

**Liabilities and partners' capital**

| | | |
|---|---|---:|
| Securities sold, not yet purchased | $ | 130 |
| Due to affiliate | | 12,577 |
| Due to investors | | 135,305 |
| Other liabilities | | 10,973 |
| Total liabilities | | 158,985 |
| Partners' capital | | 2,334,619 |
| Total liabilities and partners' capital | $ | 2,493,604 |

# Millennium USA LP

## Unaudited Consolidated Statement of Income

### For the Quarter Ended March 31, 2009
*(In thousands)*

**Gain (loss) on securities transactions allocated from
Millennium Partners, L.P.**

| | | |
|---|---:|---:|
| Net gain from principal transactions | $    87,585 | |
| Net realized gain on futures transactions | 74,201 | |
| Net change in unrealized gain/loss on futures transactions | (39,830) | |
| Net gain on securities transactions from Millennium Partners, L.P. | 121,956 | |
| | | |
| **Fund loss from securities transactions** | | |
| Net loss from principal transactions | (1,871) | |
| Total net gains from securities transactions | | $ 120,085 |
| | | |
| **Investment income (expense) allocated from** | | |
| **Millennium Partners, L.P.** | | |
| Interest and dividend revenue | 65,928 | |
| Interest and dividend expense | (23,139) | |
| Other | (14,176) | |
| Net investment income from Millennium Partners, L.P. | 28,613 | |
| | | |
| **Fund investment income (expense)** | | |
| Interest and dividend revenue | 703 | |
| Interest and dividend expense | (111) | |
| Compensation and related expenses | (37,011) | |
| Other | (593) | |
| Fund net investment expense | (37,012) | |
| Total net investment expense | | (8,399) |
| Net income before incentive allocation | | 111,686 |
| Less incentive allocation to general partner | | (4,291) |
| Net income after incentive allocation | | $  107,395 |

## Millennium Partners, L.P.

## Unaudited Consolidated Statement of Financial Condition

March 31, 2009

*(In thousands)*

**Assets**

| | | |
|---|---:|---:|
| Cash | $ | 1,205,524 |
| Receivable from brokers, dealers and clearing organizations, net | | 10,235,052 |
| Securities purchased under agreements to resell | | 19,801,667 |
| Securities owned | | 29,492,669 |
| Securities borrowed | | 1,850,727 |
| Fixed assets and leasehold improvements, net of accumulated depreciation and amortization | | 109,331 |
| Other assets | | 415,730 |
| Total assets | $ | 63,110,700 |

**Liabilities and partners' capital**

| | | |
|---|---:|---:|
| Payable to brokers, dealers and clearing organizations, net | $ | 3,737,432 |
| Securities sold under agreements to repurchase | | 25,911,713 |
| Securities sold, not yet purchased | | 20,516,072 |
| Securities loaned | | 618,199 |
| Payable to limited partners | | 973,520 |
| Other liabilities | | 184,214 |
| Total liabilities | | 51,941,150 |
| Partners' capital | | 11,169,550 |
| Total liabilities and partners' capital | $ | 63,110,700 |

# Millennium Partners, L.P.

## Unaudited Consolidated Statement of Income

For the Quarter Ended March 31, 2009
*(In thousands)*

| | | |
|---|---|---:|
| **Gain (loss) on securities transactions** | | |
| Net gain from principal transactions | $ | 439,912 |
| Net realized gain on futures transactions | | 371,483 |
| Net change in unrealized gain/loss on futures transactions | | (199,410) |
| Net gain from securities transactions | | 611,985 |
| | | |
| **Net investment income (expense)** | | |
| Interest and dividend revenue | | 330,065 |
| Interest and dividend expense | | (115,841) |
| Compensation and related expenses | | (30,763) |
| Data and communications | | (16,111) |
| Depreciation and amortization | | (10,320) |
| Rent and related expenses | | (8,576) |
| General and administrative | | (2,626) |
| Professional fees | | (2,495) |
| Other | | (78) |
| Net investment income | | 143,255 |
| Net income | $ | 755,240 |

Millennium USA LP

Unaudited Statement of Changes in Individual Partner's Capital

For the Quarter Ended March 31, 2009

**P00502**

Class                                                                          PP

**Partner's Capital**

| | | |
|---|---|---:|
| January 1, 2009 | $ | 91,777,133 |
| Contributions | | - |
| Transfers In | | - |
| Withdrawals (A) | | (12,120,794) |
| Early Withdrawal Charge | | (505,033) |
| Transfers Out | | - |
| Net Income (B) | | 4,370,253 |
| March 31, 2009 | $ | 83,521,559 |

**These figures are not to be used for tax purposes.**

**You have made the following election and representation:**

Eligible to participate in New Issues (C)                                      No

(A) Withdrawals include amounts withdrawn effective March 31, 2009.

(B) Net income per individual partner was calculated in conformity with Section 3.05 of the Limited Partnership Agreement.

(C) Based on a representation you have made to the Fund with regard to "new issues" your eligibility to participate in profits and losses of the Fund in connection with the purchase and sale of "new issues" is indicated above. If the representation you made to the Fund relating to "new issues" is still accurate, no action is required on your part. If the above representation and election you have provided to the Fund have changed, you must immediately contact Robert Williams at (212) 841-4125. If we are not contacted within fifteen (15) days after the date of this letter, the above representation and election will be deemed conclusive.

(D) Quarterly withdrawals are subject to pre-existing contractual limits on withdrawals.

# EXHIBIT J

# MILLENNIUM MANAGEMENT LLC

666 FIFTH AVENUE
NEW YORK, NY 10103-0899

TELEPHONE 212.841.4100
TELEFAX 212.841.4141

July 30, 2009

Dear Investor:

Preliminary results for Millennium USA LP ("USA") for the quarter and six months ended June 30, 2009 are set forth below.  Since we are now having our financial statements audited twice per year, final results will be provided in the letter accompanying the June 30, 2009 audited financial statements that we will be sending you in September.  The returns below are based on amounts invested as of January 1, 2009 and assume that the partner has been an investor since January 1, 2008 without any withdrawals.  The returns are net of expenses and reflect an Incentive Allocation after recovery of an investor's high water mark. The computation of returns for an individual investor may vary based on the timing of capital transactions.

|  | Quarter Ended June 30, 2009 | Year-to-Date June 30, 2009 |
|---|---|---|
| Including New Issues | +4.42% | +9.16% |
| Excluding New Issues | +4.41% | +9.16% |

Enclosed with this letter are USA's Unaudited Consolidated Statements of Financial Condition and Income and the Unaudited Statement of Changes in Individual Partner's Capital for the quarter ended June 30, 2009. Since Ernst & Young is performing an audit as of June 30, 2009, results remain subject to the effects of that audit. Included in the Unaudited Statement of Changes in Individual Partner's Capital is a reference to your prior representation to us regarding the status of your account relating to "new issues".  Please review this information and immediately contact Robert Williams at (212) 841-4125 if that information is inaccurate. If you do not contact us within fifteen (15) days after the date of this letter, the representation will be deemed conclusive.

USA's total net asset value decreased by $28,905,069 for the quarter ended June 30, 2009, notwithstanding our profitability in the quarter. In accordance with CFTC regulations, the commodity pool operator, Millennium Management LLC, on whose behalf this is signed below, represents that to the best of its knowledge all information contained in the statements described in the preceding paragraphs is true, correct and complete.

As you all know, we have been responding in every way we can to concerns that we hear expressed about the hedge fund industry in general. Although we already have audited financial statements, audited by one of the "Big 4" auditing firms, who meet the most stringent independence standards, we have commenced—beginning with the six-month period just ended—having our financial statements audited twice a year instead of once. In January of this year, we appointed GlobeOp Financial Services as our independent third party administrator. As administrator, GlobeOp verifies cash and positions to the records of the institutions (such as our prime brokers) where our securities are held. With regard to pricing verification, GlobeOp compares valuations of publicly traded security positions provided by the Investment Manager to market data independently obtained from third party providers. Fair valuations of other security positions are compared to information received from third parties, including brokers and independent valuation service providers.

We believe that these independent relationships, together with our very robust internal control functions—Risk Management, Legal and Compliance and Management Controls & Internal Audit—should provide our investors with a degree of comfort regarding our stewardship of the funds' assets.

We continue to enhance the transparency we provide to investors, expanding the investors' website to provide additional information as to our holdings and the sources of our income.

In short, we have significantly rededicated ourselves this year to providing you, our investors, with a substantial degree of comfort and security. We welcome your questions, as well as any thoughts or suggestions you might have as to how we can better serve you in this regard.

We are also expanding our approach to "soft-dollar" transactions—using commissions effectively to pay for some research or brokerage services (as defined under the Securities Exchange Act of 1934, §28 (e)). In the future, we anticipate engaging in such transactions to an increased extent, as is typical of firms in our industry, particularly those who, like us, generate very large commissions by virtue of our high transaction volume. This will not make any meaningful economic difference to you as investors, because all of our funds' expenses are paid by the funds themselves in lieu of a base management fee; it does not result in any expense shifting between the funds and the management company. We encourage you to review the confidential memorandum for investors, including any supplements, for a more complete description. The memorandum is available on our investors' website at http://www.mlp.com. (Indeed, periodically reviewing that memorandum is generally a useful exercise, as that is the place where we maintain the most complete and current description of our business that is available, and various parts of the business do change from time to time.)

As always, if you have any questions, please do not hesitate to contact Robert Williams, Terry Feeney or myself.


Sincerely,
Millennium Management LLC
Commodity Pool Operator for Millennium USA LP and Millennium Partners, L.P.
Managing General Partner


Israel A. Englander
Managing Member

Enclosure

# Millennium USA LP

## Unaudited Consolidated Statement of Financial Condition

June 30, 2009

*(In thousands)*

**Assets**

| | | |
|---|---|---:|
| Cash | $ | 1,203 |
| Receivable from brokers, dealers and clearing organizations | | 32,722 |
| Securities owned | | 21,106 |
| Investment in Millennium Partners, L.P. | | 2,348,351 |
| Receivable from Millennium Partners, L.P. | | 139,458 |
| Other assets | | 17,523 |
| Total assets | | $ 2,560,363 |

**Liabilities and partners' capital**

| | | |
|---|---|---:|
| Securities sold, not yet purchased | $ | 124 |
| Due to affiliate | | 63,509 |
| Due to investors | | 173,336 |
| Other liabilities | | 17,679 |
| Total liabilities | | 254,648 |
| | | |
| Partners' capital | | 2,305,715 |
| Total liabilities and partners' capital | | $ 2,560,363 |

# Millennium USA LP

## Unaudited Consolidated Statement of Income

For the Quarter Ended June 30, 2009
*(In thousands)*

**Gain (loss) on securities transactions allocated from Millennium Partners, L.P.**

| | | |
|---|---:|---:|
| Net gain from principal transactions | $ 179,302 | |
| Net realized gain on futures transactions | 12,670 | |
| Net change in unrealized gain/loss on futures transactions | (7,831) | |
| Net gain on securities transactions from Millennium Partners, L.P. | 184,141 | |
| | | |
| **Fund gain from securities transactions** | | |
| Net gain from principal transactions | 5,737 | |
| Total net gains from securities transactions | | $ 189,878 |
| | | |
| **Investment income (expense) allocated from Millennium Partners, L.P.** | | |
| Interest and dividend revenue | 42,743 | |
| Interest and dividend expense | (34,953) | |
| Other | (16,392) | |
| Net investment expense from Millennium Partners, L.P. | (8,602) | |
| | | |
| **Fund investment income (expense)** | | |
| Interest and dividend revenue | 575 | |
| Interest and dividend expense | (22) | |
| Compensation and related expenses | (53,164) | |
| Other | (67) | |
| Fund net investment expense | (52,678) | |
| Total net investment expense | | (61,280) |
| Net income before incentive allocation | | 128,598 |
| Less incentive allocation to general partner | | (23,659) |
| Net income after incentive allocation | | $ 104,939 |

Millennium USA LP

Unaudited Statement of Changes in Individual Partner's Capital

For the Quarter Ended June 30, 2009

**P00502**

| | | |
|---|---|---:|
| Class | | PP - 6/30/2010 |
| **Partner's Capital** | | |
| April 1, 2009 | $ | 83,521,559 |
| Contributions | | - |
| Transfers In | | - |
| Withdrawals (A) | | (11,151,385) |
| Early Withdrawal Charge | | (227,579) |
| Transfers Out | | - |
| Net Income (B) | | 3,819,763 |
| June 30, 2009 | $ | 75,962,358 |

**These figures are not to be used for tax purposes.**

**You have made the following election and representation:**

| | |
|---|---:|
| Eligible to participate in New Issues (C) | No |

(A) Withdrawals include amounts withdrawn effective June 30, 2009.

(B) Net income per individual partner was calculated in conformity with Section 3.05 of the Limited Partnership Agreement.

(C) Based on a representation you have made to the Fund with regard to "new issues" your eligibility to participate in profits and losses of the Fund in connection with the purchase and sale of "new issues" is indicated above. If the representation you made to the Fund relating to "new issues" is still accurate, no action is required on your part. If the above representation and election you have provided to the Fund have changed, you must immediately contact Robert Williams at (212) 841-4125. If we are not contacted within fifteen (15) days after the date of this letter, the above representation and election will be deemed conclusive.

(D) Quarterly withdrawals are subject to pre-existing contractual limits on withdrawals.

# EXHIBIT K

# MILLENNIUM MANAGEMENT LLC

666 FIFTH AVENUE
NEW YORK, NY 10103-0899

TELEPHONE 212.841.4100
TELEFAX 212.841.4141

October 30, 2009

Dear Investor:

As we have throughout this year, we're writing with two purposes: to let you know about the most recent measure we've taken to provide our investors with greater comfort regarding their investment with us, and to provide our most recent financial statements. To start with the traditional information, the return results of Millennium USA LP ("USA") for the quarter ended and year to date September 30, 2009 are set forth below. The returns below are based on amounts invested as of January 1, 2009 and assume that the partner has been an investor since January 1, 2008 without any withdrawals. The returns are net of expenses and reflect an Incentive Allocation after recovery of an investor's high water mark. The computation of returns for an individual investor may vary based on the timing of capital transactions.

|  | Quarter Ended September 30, 2009 | Year-to-Date September 30, 2009 |
|---|---|---|
| Including New Issues | +2.70% | +12.11% |
| Excluding New Issues | +2.69% | +12.10% |

Enclosed with this letter are USA's Unaudited Consolidated Statements of Financial Condition and Income and the Unaudited Statement of Changes in Individual Partner's Capital for the quarter ended September 30, 2009. Also enclosed please find the Unaudited Consolidated Statements of Financial Condition and Income for Millennium Partners, L.P. for the quarter ended September 30, 2009. Included in the Unaudited Statement of Changes in Individual Partner's Capital is a reference to your prior representation to us regarding the status of your account relating to "new issues". Please review this information and immediately contact Robert Williams at (212) 841-4125 if that information is inaccurate. If you do not contact us within fifteen (15) days after the date of this letter, the representation will be deemed conclusive.

The new measure we've taken is to provide you with additional information regarding our system of internal controls at Millennium. Specifically, we've had our independent auditors,

Ernst & Young LLP, report on specified controls in use at Millennium pursuant to Statement of Auditing Standards 70, commonly referred to as a SAS 70 report. This is a Type I report, outlining and describing the specified control systems. You can access this report, subject to certain limitations and conditions, either through our website or separately by going to the Ernst & Young website. From our password-protected investor website at mlp.com, click on the "Fund Information" tab then the "Fund Documents" tab then "Click here for the SAS 70 report." If you want to get it directly from the Ernst & Young website, you'll need a special user name and password so if you want to use it, please contact SeaJin Huh (SeaJin.Huh@mlp.com or 212.708.4752), and she will make the arrangements for you.

As a general matter, SAS 70 reports were developed to allow service organizations to disclose their control activities and processes in a uniform format, and to enable an independent auditor to issue an opinion regarding that description. We believe that we're one of only a small number of hedge funds to provide their investors with this kind of a review, but we think you'll find the Type I SAS 70 report helpful in assessing your investment with us. Please let us know what your reaction is.

In the thirteen months since Lehman collapsed, and then the Madoff story broke, confidence in the financial system in general was shaken, and confidence in the hedge fund industry in particular was shattered. We're trying to recover from those events, which were not of our making in any respect. They say necessity is the mother of invention, and out of necessity, we've substantially reinvented how we present ourselves to our investors. Besides the new SAS 70 report, we've

- Retained GlobeOp® Financial Services as independent administrator
- Commenced providing financial statements, audited by Ernst & Young LLP, twice a year
- Substantially increased the investor disclosure and transparency on our website
- Initiated providing investors with independent RiskMetrics™ Group, Inc. exposure reports

We've also maintained our operational quality rating of OQ-1 from Moody's Investors Service—the highest operational quality rating Moody's issues, and our certification from Amber Partners.

We think, and hope, you'll take considerable additional comfort from these efforts. At this stage, we think we have as much independent review and analyses of our information as any firm in the industry, and much more than the average publicly held company.

As we've previously announced, we decided to satisfy all properly filed and pending withdrawal requests as of September 30. After those withdrawals, and an additional $110,432,000 of aggregate new investments, at October 1, the estimated aggregate assets under management at USA and at all Millennium Funds were $1,909,524,547 and $7,541,507,321, respectively.

In accordance with CFTC regulations, the commodity pool operator, Millennium Management LLC, on whose behalf this is signed below, represents that to the best of its knowledge all information contained in the statements described in the preceding paragraphs is true, correct and complete.

As always, if you have any questions, please do not hesitate to contact Robert Williams, Terry Feeney or myself.


Sincerely,
Millennium Management LLC
Commodity Pool Operator for Millennium USA LP and Millennium Partners, L.P.
Managing General Partner


Israel A. Englander
Managing Member

Enclosure

# Millennium USA LP

## Unaudited Consolidated Statement of Financial Condition

September 30, 2009

*(In thousands)*

**Assets**

| | | |
|---|---|---:|
| Cash | $ | 1,502 |
| Receivable from brokers, dealers and clearing organizations | | 47,196 |
| Securities owned | | 40,265 |
| Investment in Millennium Partners, L.P. | | 1,924,596 |
| Receivable from Millennium Partners, L.P. | | 532,970 |
| Other assets | | 21,163 |
| Total assets | $ | 2,567,692 |

**Liabilities and partners' capital**

| | | |
|---|---|---:|
| Securities sold, not yet purchased | $ | 7,584 |
| Due to affiliate | | 87,086 |
| Due to investors | | 602,195 |
| Other liabilities | | 22,649 |
| Advanced contributions | | 1,500 |
| Total liabilities | | 721,014 |
| | | |
| Partners' capital | | 1,846,678 |
| Total liabilities and partners' capital | $ | 2,567,692 |

# Millennium USA LP

## Unaudited Consolidated Statement of Income

### For the Quarter Ended September 30, 2009
*(In thousands)*

| | | |
|---|---:|---:|
| **Gain on securities transactions allocated from** | | |
| **Millennium Partners, L.P.** | | |
| Net gain on principal transactions | $ 88,543 | |
| Net realized gain on futures transactions | 29,093 | |
| Net change in unrealized gain/loss on futures transactions | 13,275 | |
| Net gain on securities transactions from Millennium Partners, L.P. | 130,911 | |
| | | |
| **Fund loss from securities transactions** | | |
| Net loss from principal transactions | (740) | |
| Total net gains from securities transactions | | $ 130,171 |
| | | |
| **Investment income (expense) allocated from** | | |
| **Millennium Partners, L.P.** | | |
| Interest and dividend revenue | 39,688 | |
| Interest and dividend expense | (41,199) | |
| Other | (17,461) | |
| Net investment expense from Millennium Partners, L.P. | (18,972) | |
| | | |
| **Fund investment income (expense)** | | |
| Interest and dividend revenue | 281 | |
| Interest and dividend expense | (76) | |
| Compensation and related expenses | (36,270) | |
| Other | 2,089 | |
| Fund net investment expense | (33,976) | |
| Total net investment expense | | (52,948) |
| Net income before incentive allocation | | 77,223 |
| Less incentive allocation to general partner | | (15,213) |
| Net income after incentive allocation | | $ 62,010 |

Millennium Partners, L.P.

Unaudited Consolidated Statement of Financial Condition

September 30, 2009
*(In thousands)*

**Assets**

| | | |
|---|---|---|
| Cash and cash equivalents | $ | 2,090,870 |
| Receivable from brokers, dealers and clearing organizations, net | | 6,942,999 |
| Securities purchased under agreements to resell | | 32,338,422 |
| Securities owned | | 25,919,981 |
| Securities borrowed | | 1,823,468 |
| Fixed assets and leasehold improvements, net of accumulated depreciation and amortization of $87,748 | | 128,639 |
| Other assets | | 450,537 |
| Total assets | $ | 69,694,916 |

**Liabilities and partners' capital**

| | | |
|---|---|---|
| Payable to brokers, dealers and clearing organizations, net | $ | 101,660 |
| Securities sold under agreements to repurchase | | 13,748,348 |
| Securities sold, not yet purchased | | 41,864,739 |
| Securities loaned | | 2,077,086 |
| Payable to limited partners | | 3,371,493 |
| Other liabilities | | 292,229 |
| Total liabilities | | 61,455,555 |
| | | |
| Partners' capital | | 8,239,361 |
| Total liabilities and partners' capital | $ | 69,694,916 |

Millennium Partners, L.P.

Unaudited Consolidated Statement of Income

For the Quarter Ended September 30, 2009
*(In thousands)*

**Gain from securities transactions**

| | |
|---|---:|
| Net gain on principal transactions | $ 418,088 |
| Net realized gain on futures transactions | 136,618 |
| Net change in unrealized gain/loss on futures transactions | 62,337 |
| Net gain from securities transactions | 617,043 |

**Net investment income (expense)**

| | |
|---|---:|
| Interest and dividend revenue | 186,369 |
| Interest and dividend expense | (193,465) |
| Compensation and related expenses | (28,936) |
| Data and communications | (19,012) |
| Depreciation and amortization | (11,952) |
| Rent and related expenses | (10,038) |
| Professional fees | (7,829) |
| General and administrative | (3,709) |
| Other | (519) |
| Net investment expense | (89,091) |
| Net income | $ 527,952 |

Millennium USA LP

Unaudited Statement of Changes in Individual Partner's Capital

For the Quarter Ended September 30, 2009

**P00502**

| | | |
|---|---|---|
| Class | | PP - 6/30/2010 |
| **Partner's Capital** | | |
| July 1, 2009 | $ | 75,962,358 |
| Contributions | | - |
| Transfers In | | - |
| Withdrawals (A) | | (76,362,970) |
| Early Withdrawal Charge | | (1,558,428) |
| Transfers Out | | - |
| Net Income (B) | | 1,959,040 |
| September 30, 2009 | $ | - |

**These figures are not to be used for tax purposes.**

**You have made the following election and representation:**
Eligible to participate in New Issues (C)                                          No

(A) Withdrawals include amounts withdrawn effective September 30, 2009.

(B) Net income per individual partner was calculated in conformity with Section 3.05 of the Limited Partnership Agreement.

(C) Based on a representation you have made to the Fund with regard to "new issues" your eligibility to participate in profits and losses of the Fund in connection with the purchase and sale of "new issues" is indicated above. If the representation you made to the Fund relating to "new issues" is still accurate, no action is required on your part. If the above representation and election you have provided to the Fund have changed, you must immediately contact Robert Williams at (212) 841-4125. If we are not contacted within fifteen (15) days after the date of this letter, the above representation and election will be deemed conclusive.

(D) Quarterly withdrawals are subject to pre-existing contractual limits on withdrawals.

# EXHIBIT L

# WEIL, GOTSHAL & MANGES LLP

767 FIFTH AVENUE • NEW YORK, NY 10153-0119

(212) 310-8000

FAX: (212) 310-8007

AUSTIN
BEIJING
BOSTON
BUDAPEST
DALLAS
DUBAI
FRANKFURT
HONG KONG
HOUSTON
LONDON
MIAMI
MUNICH
PARIS
PRAGUE
PROVIDENCE
SHANGHAI
SILICON VALLEY
WARSAW
WASHINGTON, D.C.

LORI R. FIFE
PARTNER
DIRECT LINE (212) 310-8318
lori.fife@weil.com

November 3, 2009

**VIA EMAIL AND U.S. MAIL**

Gregg L. Weiner, Esq.
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, NY 10004
(212) 859-8579

    Re:   **Millennium USA, L.P. ("Millennium")**

Dear Gregg:

        As you know, we represent Lehman Brothers Holdings, Inc. ("LBHI"), Lehman Brothers Special Financing Inc. ("LBSF"), and certain of their affiliates (collectively, the "Debtors") in their chapter 11 cases under title 11 of the United States Code (the "Bankruptcy Code") in the Southern District of New York.

        Approximately ten months ago, on December 30, 2008, LBSF sent a request for the withdrawal of its limited partnership interest in Millennium USA, LP ("Millennium"), seeking to withdraw the entire balance of its capital account (the "Withdrawal Amount"). Millennium has refused, despite repeated demands by LSBF, to pay LBSF the Withdrawal Amount. As ground for its refusal, Millennium has asserted unsubstantiated rights of setoff arising from: first, the "myriad of claims and causes of action" between and among Millennium, Partners L.P. ("Partners"), LBSF, and certain of LBSF's affiliates and the potential substantive consolidation of the Debtors' estates; and second, Partners' alleged claim against LBSF and the combination of Partners and Millennium for purposes of setoff.

        As we have stated in our letters to you on April 14, 2009, and July 16, 2009, we cannot accept Millennium's alleged setoff defenses because of a clear lack of mutuality of the parties and their obligations. 11 U.S.C. § 553(a); *Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138, 149 (2d Cir. 2002); *In re Lehman Brothers Holdings, Inc.*

Gregg L. Weiner
November 3, 2009
Page 2

404 B.R. 752, 757 (Bankr. S.D.N.Y. 2009). Millennium's argument that the Debtors may be substantively consolidated does not change that result. *See In re Wade Cook Fin. Corp.*, 375 B.R. 580, 598 (B.A.P. 9th Cir. 2007); *In re Garden Ridge Corp.*, 338 B.R. 627, 641 (Bank. D. Del. 2008). Nor may Millennium and Partners be considered one entity for purposes of setoff. *See, e.g., Capital Concepts Properties 85-1 v. Mutual First, Inc.*, 35 F.3d 170, 175 (5th Cir. 1994). The law is clear—Millennium may not withhold funds that it undeniably owes to LBSF by virtue of alleged claims it has against LBSF's affiliates, or by virtue of an alleged claim Partners has against LBSF.

Accordingly, we reiterate our demand, one final time, for the immediate payment to LBSF of the Withdrawal Amount. Unless you comply with this request, we will resort to legal action.

This letter is without prejudice or waiver of any rights, claims and remedies of LBSF, all of which are expressly reserved.

Sincerely,

Lori R. Fife

cc:     Mr. Bryan Marsal
        Harvey R. Miller, Esq.